UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBIN D. ANDERSON, | : | CIVIL NO. 1:12-CV-02173 |
| Plaintiff, | : | |
| | : | (Chief Judge Conner) |
| v. | : | |
| PENNSYLVANIA STATE POLICE, *et al.*, | : | (Magistrate Judge Schwab) |
| Defendants. | : | |

**REPORT AND RECOMMENDATION**

**I. Introduction.**

Plaintiff Robin D. Anderson ("Anderson") commenced this action by filing a complaint on October 31, 2012 (*doc. 1*), followed by an amended complaint on May 9, 2013 (*doc. 13*). In the amended complaint, Anderson alleged that her now former employer, Defendant Pennsylvania State Police ("PSP"), through its managers, supervisors, agents, and employees, engaged in a pattern and practice of unlawful race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. C.S. § 955(a), *et seq.* Doc. 13 at 1. The majority of Anderson's claims were resolved by Chief Judge Conner's May 11, 2015 Order (*doc. 61*), where he granted the defendants' collective motion (*doc. 36*)

for summary judgment with respect to the following claims: (1) Counts I and II for disparate treatment discrimination and hostile work environment, in violation of Title VII and the PHRA; (2) Counts III and IV for retaliation based on Anderson's December 2010 employee performance review, in violation of Title VII and the PHRA; and (3) Count V for aiding and abetting retaliation, in violation of the PHRA. *Doc. 61* at 4. In finding that the defendants' motion neither contemplated nor addressed Anderson's retaliation claims based on her April 2011 and April 2012 performance reviews, Judge Conner granted the defendants leave to file a renewed motion for summary judgment. *Id.* at 5. Accordingly, the matter was remanded back to us for further pretrial management, including resolution of a renewed motion for summary judgment, should it be filed. *Id.* Within eleven days of Chief Judge Conner's Order, PSP filed a renewed motion (*doc. 63*) for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1] That motion has been fully briefed and is now ripe for disposition. For the reasons that follow, we recommend granting PSP's motion.

---

[1] Although PSP's documents are titled, "Defendants' Renewed Motion for Summary Judgment," (*doc. 63*), and "Brief in Support of Defendants' Renewed Motion for Summary Judgment" (*doc. 64*), the only surviving defendant in this lawsuit is PSP.

## II. Background and Statement of Facts.[2]

[O]n April 11, 2011, Anderson received an annual [performance review] from [Janice Brzana ("Brzana"), a Project Manager for PSP], with an overall rating of "satisfactory." [*Doc. 37*] at ¶ 55. Indeed, in four out of six job factors, Anderson received a "satisfactory" rating. *Doc. 38-3* at 37-38. Moreover, with respect to her job knowledge and skills, Anderson received a "commendable" rating. *Id.* at 37. Furthermore, Anderson received a "needs improvement" rating with respect to her communication skills. *Id.*

Despite receiving an overall "satisfactory" rating, Anderson filed an appeal with the [State Civil Service Commission ("SCSC")], complaining that the [performance review] was discriminatory and in retaliation for the previous complaints that she had made. *See Doc. 38-15*; *see also Doc. 38-17* at 3. On June 15, 2011, the SCSC denied Anderson's appeal primarily because Anderson did not "indicate[] acts, which, if proven, would [have] constitute[d] discrimination . . . ." *Doc. 38-15*.

. . . .

Ten days before Brzana completed Anderson's second annual [performance review], Anderson had emailed Brzana stating in pertinent part that: "It is very unfortunate that someone at my level and with the skillsets that I have, has been isolated and have been provided disparate treatment and racial discrimination to the point that goals and objectives are missed." *Doc. 51-3* at 22. On April 27, 2012, 10 days later, Anderson received a second, annual [performance review], with an overall

---

[2] Considering that we write primarily for the parties, we need not repeat the factual or procedural history of this case, which is completely and thoroughly set forth in our March 6, 2015 Report and Recommendation (*see doc. 57*). Moreover, as we are presented with PSP's renewed motion for summary judgment, we need not repeat our entire statement of facts, except insofar as may be helpful to our discussion. *See id.* In that regard, we will repeat our statement of facts with respect to Andersons's performance reviews for April 2011 and April 2012, as these facts are pertinent to the resolution of PSP's motion.

3

>  "unsatisfactory" rating. *Doc. 37* at ¶ 64. In the April 2012 [performance review], Brzana then noted in the same [performance review] that Anderson was not taking ownership of assigned projects, adhering to timelines, communicating in a positive manner or constructive manner, or carrying out her duties effectively. *Id.* at ¶ 65. The steering committee's meeting minutes, from March 17 to August 4, 2011, do not reflect that Anderson was presenting a problem to the PICS project, however. *See Doc. 51-3* at 34-51. Yet, based upon the overall "unsatisfactory" rating in the annual [performance review], Anderson was issued a Level 1 discipline letter in lieu of a one-day suspension. *Doc. 37* at ¶ 66. The Level 1 discipline letter carried the same weight for progressive discipline purposes as a one day suspension, but it had no impact on Anderson's pay, seniority or other benefits. *Id.* at ¶ 69.
>
> . . . .
>
> On April 27, 2012, Anderson appealed her annual [performance review] and the Level 1 discipline letter to the SCSC. [*Doc. 37*] at ¶ 70. The issues before the SCSC were: (1) whether the performance [review] or the Level 1 discipline were affected by discrimination in violation of the Civil Service Act, and (2) whether the Level 1 discipline was imposed for cause sufficient under the Civil Service Act. *Id.* at ¶ 71. Following a hearing, where Anderson was represented by counsel, the SCSC dismissed Anderson's appeal, sustaining the content of the [performance review] and Level 1 discipline. *Id.* at ¶ 72.

*Doc. 57* at 19-20, 22-23.

**III. Legal Standards.**

PSP filed a renewed motion for summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

4

R. Civ. P. 56(a). "Through summary adjudication the court may dispose of those claims that do not present a 'genuine dispute as to any material fact' and for which a jury trial would be an empty and unnecessary formality." *Goudy-Bachman v. U.S. Dept. of Health & Human Services*, 811 F. Supp. 2d 1086, 1091 (M.D. Pa. 2011) (quoting Fed. R. Civ. P. 56(a)).

The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With respect to an issue on which the nonmoving party bears the burden of proof, the moving party may discharge that burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must show a genuine dispute by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c). If the nonmoving party "fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. *Celotex*, 477 U.S. at 322. Summary judgment is also appropriate if the nonmoving party provides merely colorable, conclusory, or speculative evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. *Id.* at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. *Id.* at 248-49. When "faced with a summary judgment motion, the court must view the facts 'in the light most favorable to the nonmoving party.'" *N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (quoting *Scott v. Harris,* 550 U.S. 372, 380 (2007)).

At the summary judgment stage, the judge's function is not to weigh the evidence or to determine the truth of the matter; rather it is to determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249. The proper inquiry of the court "is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

Summary judgment is warranted, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322. "Under such circumstances, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. CONRAIL*, 297 F.3d 242, 247 (3d Cir. 2002) (quoting *Celotex,* 477 U.S. at 323). "[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

Further, a party that moves for summary judgment on an issue for which he bears the ultimate burden of proof faces a difficult road. *United States v. Donovan*, 661 F.3d 174, 185 (3d Cir. 2011). "[I]t is inappropriate to grant summary judgment in favor of a moving party who bears the burden of proof at trial unless a reasonable juror would be compelled to find its way on the facts needed to rule in its favor on the law." *El v. Se. Pa. Transp. Auth.,* 479 F.3d 232, 238 (3d Cir. 2007) (footnote omitted). A party who has the burden of proof must persuade the factfinder that his propositions of fact are true, and "if there is a chance that a reasonable factfinder would not accept a moving party's necessary propositions of fact, pre-trial judgment cannot be granted." *Id*. "Specious objections will not, of course, defeat a motion for summary judgment, but real questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof, will." *Id.*

**IV. Discussion.**

"Title VII prohibits discrimination in employment on the basis of an employee's race, 42 U.S.C. § 2000e–2(a); and the PHRA prohibits discrimination in employment based on both age and race, 43 Pa. Stat. § 955(a)." *Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 192 (3d Cir. 2015). Both statutes "also make it unlawful for an employer to retaliate against an employee for either 'oppos[ing] any practice' made unlawful by their respective provisions or for participating 'in

any manner' in an investigation, proceeding, or hearing under their respective provisions." *Id.* (citing 42 U.S.C. § 2000e–3(a); 43 Pa. Stat. § 955(d)).

Here, Anderson asserts retaliation claims under both Title VII and the PHRA, claiming that after she filed complaints of discrimination with the EEOC and the SCSC in August and September of 2010, respectively, she received "resoundingly negative" performance reviews in April of 2011 and April of 2012. *Doc. 13* at ¶¶ 61, 62, 75-76, 80-81, 112, 114. We will address these claims together as the circumstances of this case do not require that we make differing analyses. *See Atkinson v. LaFayette Coll.*, 460 F.3d 447, 454 n.6 (3d Cir. 2006) ("Claims under the PHRA are interpreted coextensively with Title VII claims."); *Burton v. Teleflex Inc.*, 707 F.3d 417, 432 (3d Cir. 2013) (treating plaintiff's PHRA claims as identical to her Title VII claims). Moreover, we will address these claims under the burden-shifting framework that the Supreme Court has outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g.*, *Moore v. City of Philadelphia*, 461 F.3d 331, 342 (3d Cir. 2006) (applying the *McDonnell Douglas* framework in a Title VII cause of action); *Fasold v. Justice*, 409 F.3d 178, 188 (3d Cir. 2005) (applying the *McDonnell Douglas* framework in a PHRA cause of action). This framework has three steps: First, the plaintiff bears the burden of establishing a *prima facie* case of retaliation, *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007); second, if the plaintiff establishes a *prima*

*facie* case, then the burden of production shifts to the employer to present a legitimate, non-retaliatory reason for its conduct, *id.*; and third, if the employer advances such a reason, then the burden shifts back to the plaintiff, who must demonstrate that the employer's proffered reason was false, and that retaliation was the real reason for its conduct, *id.*.

> **A. Anderson Cannot Sustain a *Prima Facie* Case of Retaliation Based on Her April 2011 and April 2012 Performance Reviews.**

To establish a *prima facie* case of retaliation, a plaintiff must show that: "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." *Moore*, 461 F.3d at 340-41 (quoting *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995)).

Here, PSP concedes that Anderson's 2010 discrimination complaints with the EEOC and the SCSC qualify as "protected activity," satisfying the first prong of the *prima facie* case analysis. *See doc. 64* at 14. PSP argues, however, that Anderson still has the burden to prove that her April 2011 and April 2012 performance reviews constitute adverse employment actions and that her filing of complaints with the EEOC and the SCSC were the but-for cause of the allegedly negative findings in those performance reviews. *Id.* As argued by PSP, Anderson fails to meet this burden. *Id.* at 14-20. We agree with PSP and begin our analysis

10

with the second prong of Anderson's *prima facie* case—adverse employment action.

For an employer's action to satisfy the second prong of a *prima facie* case of retaliation, a plaintiff "must show that a reasonable employee would have found the alleged retaliatory actions 'materially adverse' in that they 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Moore*, 461 F.3d at 341 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). Whether an action is materially adverse "depends upon the circumstances of the particular case, and 'should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances.'" *Burlington Northern*, 548 U.S. at 71 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)).

Here, even viewing all of the facts and the reasonable inferences therefrom in the light most favorable to Anderson, we nevertheless find that she has failed to demonstrate that PSP took adverse employment actions against her by way of her April 2011 and April 2012 performance reviews. In her April 2011 performance review, she received an overall rating of "satisfactory." *See doc. 38-3* at 39. Although she received a "needs improvement" rating as to her communication skills, *id.* at 37, Anderson does not identify, much less establish, any harm or injury inflicted as a result of this performance review. Moreover, there is no evidence of

record that this performance review had any tangible effect on her employment status. Rather, it is undisputed that throughout her employment with PSP, Anderson's rate of pay was never reduced, she was never demoted, and she never lost her benefits. *Doc. 37* at 17, ¶ 82; *doc. 51-1* at 17, ¶ 82; s*ee Ponton v. AFSCME*, 395 Fed.Appx. 867, 874 (3d Cir. 2010) ("While the evaluation did note that there were occasions when [plaintiff] refused to 'follow directives,' the record does not reasonably support a finding that the evaluation overall was materially adverse."). Accordingly, we find that a reasonable employee would not have found the April 2011 performance review materially adverse, such that it would deter a reasonable employee from making or supporting a charge of discrimination.

Unlike her April 2011 performance review, Anderson received an overall "unsatisfactory" rating in her April 2012 performance review (*see doc. 38-3* at 52), and based upon this rating, she was issued a Level 1 discipline letter in lieu of a one-day suspension (*id.* at 14-15; *doc.* 37 at ¶ 66). While the Level 1 discipline letter carried the same weight for progressive discipline purposes as a one-day suspension, Anderson has not sufficiently alleged that this letter or performance evaluation tangibly altered the conditions of her employment, subjected her to a decrease in pay or benefits, or that she experienced any other change with respect to her employment. Rather, and as previously stated, it is undisputed that throughout her employment with PSP, Anderson's rate of pay was never reduced,

she was never demoted, and she never lost her benefits. *Doc. 37* at ¶ 82*; doc. 51-1* at ¶ 82; *see Spears v. Missouri Dep't of Corr. & Human Res.*, 210 F.3d 850, 854 (8th Cir. 2000) (providing that "[a] poor performance rating does not in itself constitute an adverse employment action because it has no tangible effect upon the recipient's employment," and thus, "[a]n unfavorable evaluation is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment."). Thus, similar to the April 2011 performance review, we also find that the April 2012 performance review, despite Anderson's conjecture, did not have a serious or tangible effect on her employment. Accordingly, a reasonable employee would not have found the April 2012 performance review materially adverse, such that it would dissuade a reasonable employee from making or supporting a charge of discrimination. Accordingly, no reasonable factfinder could find that Anderson has established a *prima facie* case of retaliation under Title VII, and consequently, PSP is entitled to summary judgment.

> **B. Assuming Anderson Established a *Prima Facie* Case of Retaliation Anderson has not Shown that PSP's Reasons were False or that Retaliation was the Real Reason for Its Conduct.**

If the plaintiff establishes a *prima facie* case of retaliation, then "'the burden shifts to the employer to advance a legitimate, non-retaliatory reason' for its conduct and, if it does so, 'the plaintiff must be able to convince the factfinder both

that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action.'" *Moore*, 461 F.3d at 342 (quoting *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500-01 (3d Cir. 1997)). "To survive a motion for summary judgment in the employer's favor, [the] plaintiff must produce some evidence from which a jury could reasonably reach these conclusions." *Id.* (citing *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)).

Assuming Anderson had established a *prima facie* case for retaliation, her claim would still fail under the *McDonnell Douglas* framework. In her memorandum of law in opposition to PSP's renewed motion for summary judgment, Anderson concedes that PSP has articulated a legitimate non-retaliatory reason for its conduct. *Doc. 68* at 2. ("Plaintiff agrees that Defendant has met the low threshold burden of articulating a legitimate non-discriminatory reason for its actions[.]"). Thus, the burden shifts back to Anderson to prove that PSP's proffered explanation was false and that retaliation was the real reason for the allegedly negative findings in her April 2011 and April 2012 performance reviews. *See Moore*, 461 at 342 (citing *Krouse*, 126 F.3d at 500-01). Anderson, however, has not met this burden. Indeed, Anderson has not come forward with "some evidence," *Moore*, 461 F.3d at 342 (citing *Fuentes*, 32 F.3d at 764), from which a factfinder could reasonably conclude that retaliation was the real reason for such findings. Moreover, Anderson has not created a record that would cast doubt upon

PSP's proffered explanation. Rather, the record supports Anderson's ongoing performance deficiencies. For instance, Brzana, in her April 2011 performance review of Anderson provided thorough commentary to support her "needs improvement" rating with respect to Anderson's communication skills, citing numerous instances where Anderson's communication was deficient. *See doc. 38-3 at 40.*[3] And, with respect to Anderson's April 2012 performance review, there was, in addition to more commentary by Brzana (*see id.* at 53), a two-day hearing before the SCSC, where an abundance of PSP employees testified as to Anderson's performance deficiencies, buttressing the "unsatisfactory" rating and Level 1 letter

---

[3] That commentary is set forth below:

Since the December 2010 [performance evaluation] Ms. Anderson has met with her supervisor a few times and attempted a few others, but has not sufficiently been providing updates on the status of projects. In addition, an incident occurred at a meeting . . . where Ms. Anderson was argumentative and defensive, interrupted while others were talking, placed blame on others for the timeline that was in question and left the meeting abruptly before it was concluded . . . Ms. Anderson did not demonstrate the improvement needed to raise the rating in this factor area . . . sometimes Ms. Anderson comes across with a negative tone within her emails. While it is possible that the intent of messages is not to be taken negatively, the tone within a written e-mail can hinder relationships and working environments. Other management and/or co-workers are inappropriately included on e-mails at times. This also creates a tense and non-productive working environment by making outside staff . . . feel uncomfortable and as though they are in the middle of a stressed situation. Being that most of a project manager's time is spent communicating, this is a critical function . . . .

*Id.*

from April of 2012.[4] *See doc. 38-2*. Accordingly, Anderson has failed to raise a material issue of fact on either ground.

Thus, even if Anderson had established a *prima facie* case of retaliation, PSP is nevertheless entitled to summary judgment because no reasonable factfinder could find that PSP's proffered explanation for implementing the allegedly negative findings in her April 2011 and April 2012 performance reviews, including the Level 1 letter, were false or that retaliation was the real reason for such findings. Consequently, we recommend granting PSP's motion for summary judgment as to Anderson's Title VII and PHRA retaliation claims. *Cf. Shaner v. Synthes*, 204 F.3d 494, 505 (3d Cir. 2000) (making the following observation with respect to performance evaluations, "we are well aware that some employees do not recognize their deficiencies and thus erroneously may attribute negative evaluations to an employer's prejudice. Accordingly, in a case like this in which

---

[4] Captain Janet McNeal was one of the employees who testified, and during her testimony, she articulated the following specific concerns with respect to Anderson's performance:

> a. [F]ailure to properly schedule a meeting room, resulting in the first project meeting being conducted in the cafeteria;
> b. [F]ailure to take command during the first meeting and disorganization;
> c. [F]ailure to get up to speed on the project;
> d. [F]ailure to provide leadership.

*Doc. 38-16* at 26.

the circumstances simply cannot support an inference that the evaluations were related to the EEOC charges, a court should not hesitate to say so.").

## V. Recommendation.

Accordingly, **IT IS RECOMMENDED** that PSP's renewed motion (*doc. 63*) for summary judgment be **GRANTED.**

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that

record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions. Failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

Submitted this **11th** day of **December 2015**.

*S/ Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge
